**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BERRIEN AND LISA SUTTON,** | : | **Criminal Action No.** |
| | : | **5:08-CR-40(HL)** |
| **Defendants.** | : | |
| | : | |
| | : | |

# ORDER

Before the Court is Berrien and Lisa Sutton's Motion to Dismiss Indictment (Doc. 88).  For the following reasons, the Motion is denied.

## I.    BACKGROUND

Berrien Sutton is a former juvenile court and state court judge for the Alapaha Judicial Circuit.  His wife, Lisa Sutton, held the positions of court administrator and alternative dispute resolution ("ADR") coordinator for that Circuit.  Judge Brooks Blitch, III, a former superior court judge in the Alapaha Circuit, appointed Berrien Sutton to his position as a juvenile court judge and Lisa Sutton to both of her governmental positions.  In addition to the governmental positions she occupied, Lisa Sutton operated a private entity called "In the Best Interests of the Children" ("IBIC").  Judge Blitch required that spouses going through divorce proceedings attend IBIC seminars, which cost $30 per spouse.

1

On July 17, 2008, the grand jury returned a multi-count Indictment (Doc. 1) against the Suttons and Blitch, as well as two other Codefendants.  Both the Suttons are charged with honest services fraud conspiracy (Count 1) and multiple counts of mail fraud (Counts 2-8).  In addition, Berrien Sutton is charged with conspiracy to commit mail fraud (Count 11).

Count 1, the honest services fraud conspiracy charge, alleges that the Suttons and Blitch conspired to:

> obtain and attempt to obtain monies of the taxpayers of the State of Georgia by fraud and false pretenses and to divert and attempt to divert these monies for the personal benefit of the conspirators and to deprive and attempt to deprive the citizens of the State of Georgia of the honest services of the co-conspirators.

(Indict. at 6.)  As part of the manner and means of this conspiracy, Count 1 alleges, among other things, that: (1) the governmental positions the Suttons occupied were unnecessary, and that Judge Blitch created those positions and appointed the Suttons to the same as a personal financial favor to them; (2) Blitch required divorcing spouses to attend IBIC seminars and allowed IBIC to operate for free out of a Clinch County office as a financial favor to Lisa Sutton; and (3) the Suttons accepted compensation "far beyond the value of the limited services they rendered" in their appointed positions.  (Indict. at 7-8.)  In return for these financial favors, Blitch allegedly received "personal loyalty, free legal services, and other intangible

benefits." (Indict. at 7.)

Count 2 alleges that Berrien Sutton, aided and abetted by Lisa Sutton and Judge Blitch, committed the offense of mail fraud in violation of 18 U.S.C. §§ 1341, 1346, and 2. As a part of the scheme and artifice to defraud, Count 2 alleges, among other things, that: (1) Berrien Sutton accepted a position as a part-time juvenile judge as a financial favor; (2) he did little or no work in that position; (3) the undeserved compensation he received was sent through the United States mails; (4) he knew the juvenile judgeship was an unnecessary position; (5) rather than adjusting his compensation to reflect the amount of work he actually did as a juvenile judge, he attempted to inflate his entitlement to retirement benefits by providing under the table payments to the other part-time juvenile judge, George Bessonette, to compensate Bessonette for handling almost the entire juvenile caseload; and (6) he sent through the United States mails the fraudulent and false salary statements that were designed to inflate his retirement benefits. (Indict. at 18-20.)

Counts 3 through 8 allege that Lisa Sutton, aided and abetted by Berrien Sutton and Judge Blitch, committed the offense of mail fraud in violation of 18 U.S.C. §§ 1341, 1346 and 2. These Counts are charged under a single heading because the essential facts that underlie them are the same, the only difference being that each Count is based on a separate mailing. As part of the scheme and artifice to defraud, Counts 3 through 8 allege, among other things, that: (1) Judge Blitch created the position of ADR coordinator in 1997 and appointed Lisa Sutton to the

same; (2) Lisa Sutton was paid approximately $2,000 per month plus travel expenses but did little or no work; (3) she was compensated far in excess of the value of the limited services she rendered as ADR coordinator; (4) the ADR program was funded by monies sent through the United States mails.  (Indict. at 21-24.)

Count 11 charges Berrien Sutton with conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 1349.  The factual basis for this charge is that Sutton, as a state court judge, assessed an illegal and authorized fee against misdemeanor probationers.  (Indict. at 56-57.)  The collected fees were then deposited into a bank account and disbursed to certain employees of the Clinch County Clerk's Office and the Clinch County Sheriff's Department.  (Indict. at 56-57.) The bank account was hidden from the Clinch County Commission.  (Indict. at 60.)

On August 18, 2008, the Suttons filed a Motion for Leave to File Excess Pages (Doc. 87), requesting that they be allowed to exceed Local Criminal Rule 47.4's 20 page limit for the Brief in Support of their Motion to Dismiss Indictment.  On that same day, before the Court ruled on their Motion to File Excess Pages, the Suttons filed their Motion to Dismiss Indictment (Doc. 88), which was accompanied by a 51 page Brief in Support.  Because the Suttons did not receive leave of Court to exceed the page limit before filing their Brief, the Court issued an Order (Doc. 170) striking the Suttons' Brief and ordering them to file by October 27, 2008, a new brief that did not exceed 30 pages.  The Suttons filed their new Brief in Support (Doc. 180) on the day the deadline expired.

On December 17 and 18, 2008, the Court held a hearing on all pending Motions, including the Motion to Dismiss that is presently before the Court.  Several weeks later, Lisa Sutton filed a Supplemental Brief Supported by the Record of December 17 and 18, 2008 (Docs. 239).  Subsequently, Berrien Sutton filed a virtually identical Supplemental Brief (Doc. 253).

## II.   DISCUSSION

Defendants contend that the Indictment, or parts thereof, should be dismissed for eight reasons: (1) Count 1 should be dismissed in part under the Goodrich case; (2) Count 1 does not allege a quid pro quo; (3) Counts 1-8 and 11 fail to allege the requisite specific intent; (4) Counts 2 and 11 fail to allege mailings; (5) the void for vagueness doctrine, the Due Process Clause, and the rule of lenity require dismissal of the Indictment; (6) the Indictment violates the separation of powers principle; (7) Count 11 fails to state a criminal offense; and (8) Berrien Sutton is entitled to judicial immunity for the conduct charged in Count 11.  The Court will address each of these arguments in turn.

### A.  Count 1 and the Goodrich Case

Section 1341 of Title 18 makes it unlawful for any person to use the mails or an interstate carrier to carry out "any scheme or artifice to defraud, or for obtaining money or property by means of, among other things, false or fraudulent pretenses."  18 U.S.C. § 1341.  Section 1343 of Title 18 criminalizes the same conduct when

carried out by means of wire communication.  18 U.S.C. § 1343.

In 1987, the Supreme Court of the United States held that the mail fraud statute did not prohibit schemes to defraud citizens of their intangible right to honest and impartial government; it only prohibited a scheme to defraud a victim of money or property.  McNally v. United States, 483 U.S. 350 (1987).  In McNally, the defendants were two state officers who arranged for their agencies to receive a share of insurance premiums that were paid by the Commonwealth of Kentucky, and thereby profited from the commissions.  Id. at 352-353.  The Court noted that the jury was not required to find that the Commonwealth itself was defrauded of any money or property.  Id. at 360.  Instead, the allegation was that the state officials failed to disclose their financial interest in the commissions, so that the people of Kentucky had been deprived of their right to have the Commonwealth's affairs conducted honestly.  Id. at 353-54.  The Court found that such conduct was not criminalized under the mail fraud statute.  Id. at 361.

After the McNally decision, the Eleventh Circuit decided United States v. Goodrich, 871 F.2d 1011 (11th Cir. 1989), the case on which the Suttons rely.  In Goodrich, the defendant, Laurence Goodrich, was indicted for mail fraud for his role in a bribery scheme that involved the Hillsborough County Board of Commissioners. Id. at 1012.  The mail fraud count charged that Goodrich schemed to defraud the citizens of Hillsborough County of "their right to the honest, faithful and disinterested services of the County Commissioners and of their right to have the business affairs

6

of the board conducted honestly, impartially, and free from deceit, corruption and fraud." Id.

After the indictment was returned by the grand jury, the Supreme Court decided McNally.  Id.  Based on the Court's holding in McNally, Goodrich filed a motion to dismiss; however, before the motion received a ruling, the Government superseded the indictment.  Id.  The superseding indictment charged that Goodrich's participation in the mail fraud scheme deprived the citizens of the County of, among other things:

> (1) the salaries, emoluments, and services of elected and appointed personnel of Hillsborough County, Florida and the use of equipment of Hillsborough County, Florida, in the analysis, review, revision of planning and zoning records and consideration by the Board of County Commissioners and various departments and offices of Hillsborough County in regard to zoning petitions which were approved by the Board of County Commissioners because of payments of bribes in violation of Florida statutes.

Id. at 1012-13.  In essence, this charge was based on the theory that the County Commission meetings were a sham because the Commissioners had received bribes, and thus, the results of their meetings were determined beforehand.  Id. at 1013.

After the indictment, Goodrich again filed a motion to dismiss.  Id.  The district court concluded that

7

the new types of property charged in the indictment were indistinguishable from the intangible right to honest government that the Court in McNally held could not serve as the basis for a mail fraud charge.  Id.  The Government appealed.

On appeal, the Eleventh Circuit affirmed the district court's decision.  Id. at 1015.  The court reasoned that the County did not "incur any expenses over and above the cost of conducting regulary-scheduled commission business."  Id.  Thus, the court "agreed with the district court that the property interest alleged to have been denied the victim here-what the government contends Hillsborough County paid salaries for but did not get–is the 'honest and faithful services' of the County Commissioners."  Id. at 1013.  Because the Supreme Court in McNally held that this property interest could not serve as the basis for a mail fraud indictment,    the Eleventh Circuit determined that the district court was correct in dismissing the mail fraud count.  Id. at 1014, 1015.

In  1988, in response to the decision in McNally, Congress enacted 18 U.S.C. § 1346, which states in its entirety:  "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible  right  of  honest  services."   Because  §  1346  does  not  stand  alone  to criminalize conduct, it must be pleaded in conjunction with §§ 1341 or 1343 to set forth a statutory violation. See, e.g., United States v. Lopez-Lukis, 102 F.3d 1164 (11th Cir. 1997) (construing § 1346 in conjunction with § 1341).  In Lopez-Lukis, the United  States  Court  of  Appeals  for  the  Eleventh  Circuit  noted  that  the  Eleventh

Circuit and the former Fifth Circuit "consistently have held that schemes by government officials to deprive the public of its right to their honest services, when a mailing is involved, constitute mail fraud." Id. at 1169.

As a result of the enactment of § 1346, and consistent with the decision of the Eleventh Circuit in Lopez-Lukis, a violation of the mail and wire fraud statutes can be obtained by showing that a defendant schemed to deprive another of the intangible right to honest services, without also having to show that the defendant deprived another of money or property.  Thus, the allegation in Count 1 that the Suttons and others conspired to deprive and attempt to deprive the citizens of the State of Georgia of the honest services of the Defendants is sufficient to allege a scheme or artifice to defraud under § 1346, in conjunction with §§ 1341, 1343, and 1349, even without a corresponding allegation that monies or property were obtained.

Count 11, however, also charges that the public was deprived of the tangible value of money, in addition to the intangible right to the Suttons' honest services, because the Suttons received taxpayer money for doing little or no work in their respective positions.  The Government thus is seeking convictions under § 1346 in conjunction with §§ 1341 and 1343, and under §§ 1341 and 1343, without reference to § 1346.

This Court finds that Count 11's allegation that the Suttons deprived the public of money is proper and not foreclosed by the Eleventh Circuit's decision in Goodrich.

The court in Goodrich did not hold, as the Suttons seem to argue, that salary can never constitute property under § 1341. To the contrary, the indictment did not allege, and the prosecution did not argue, that the County incurred any additional expenses as a result of the "sham" meetings. Goodrich, 871 F.2d at 1013. The prosecution argued only that the taxpayers were deprived of the salaries paid to the bribed commissioners because the commissioners were not paid salaries to reach results that were foreordained by the payment of bribes; they were paid to honestly and faithfully execute their duties. Thus, the court concluded that the indictment's allegation that the taxpayer's were deprived of the commissioners' salaries was simply another way of saying that they were deprived of the commissioners' honest services. Id. at 1013.

In this case, Count 1 does allege that the County incurred additional expenses as a result of the Suttons' scheme to defraud. Specifically, the County incurred the additional expenses of paying for the salaries of unnecessary positions. Had these unnecessary positions not been created by Judge Blitch, the County treasury would have retained the monies that were used to pay the Suttons's salaries. Other courts have concluded that fraudulently obtained salaries can constitute "money or property" under § 1341, and these decisions are not inconsistent with Goodrich. See, e.g., United States v. Sorich, 523 F.3d 702, 713 (7th Cir. 2008) ("[C]ourts have found that salaries fraudulently obtained...represent property for purposes of mail fraud."); United States v. Doherty, 867 F.2d 47, 56, 60 (1st Cir. 1989) (Breyer, J.).

10

As a result, the Court rejects the Suttons' argument that <u>Goodrich</u> requires dismissal of Count 1 on the ground that the Suttons's salaries do not constitute "money or property."

### B. Count 1's Failure to Allege a Quid pro Quo

The Suttons contend that Count 1 should be dismissed because it does not allege a quid pro quo. According to the Suttons, an honest service fraud conviction requires proof of an explicit quid pro quo. In support of this argument, they cite a Supreme Court case, <u>McCormick v. United States</u>, 500 U.S. 257 (1991). In <u>McCormick</u>, the Supreme Court held that an elected official's receipt of campaign contributions violates the Hobbs Act, 18 U.S.C. § 1951, "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." <u>Id.</u> at 273. Although <u>McCormick</u> was a Hobbs Act case, the Suttons argue that the Court's reasoning applies equally to the mail fraud statute. In response, the Government argues that the reasoning in <u>McCormick</u> is limited to the Hobbs Act and has no applicability to this case.

In <u>McCormick</u>, the defendant, Robert McCormick, was a legislator in West Virginia. To combat a shortage of doctors in the state, West Virginia allowed foreign medical school graduates to practice medicine under temporary permits while they studied for the state licensing exams. After McCormick received campaign contributions from a group of foreign doctors, he supported legislation that allowed

experienced doctors to be permanently licensed without ever passing the state exams.  The bill was enacted into law, and McCormick subsequently received another cash contribution from the foreign doctors.  Id. at 259-60.

After an investigation, McCormick was indicted for violating the Hobbs Act, 18 U.S.C. § 1951.  Id. at 261.  The Hobbs Act makes it unlawful to obstruct, delay, or affect interstate commerce by robbery or extortion. 18 U.S.C. § 1951.  "An extortion conviction under the Hobbs Act requires proof that (1) the defendant induced his victim to part consensually with property (2) either through the wrongful use of actual or threatened force, violence or fear or under color of official right (3) in such a way as to adversely affect interstate commerce."  United States v. Smalley, 754 F.2d 944, 947 (11th Cir. 1985).  There are two types of Hobbs Act extortion:  (1) extortion by force, which is the "'obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear;'" and (2) extortion under color of official right, which is the "'obtaining of property from another, with his consent, under color of official right.'"  United States v. Clark, 773 F. Supp. 1533, 1534 (M.D. Ga. 1991) (quoting United States v. Williams, 621 F.2d 123, 124 (5th Cir. 1980)).[1]  The indictment against McCormick charged that he extorted payments from the doctors under color of official right.  McCormick, 500 U.S. at 261.

---

[1]The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).  This body of precedent is binding unless and until overruled by the Eleventh Circuit en banc.  Id.

At the close of the evidence, the district court in <u>McCormick</u> instructed the jury that:

> "Extortion under color of official right means the obtaining of money by a public official when the money obtained was not lawfully due and owing to him or to his office.  Of course, extortion does not occur where one who is a public official receives a legitimate gift or a voluntary political contribution even though the political contribution may have been made in cash in violation of local law.  Voluntary is that which is freely given without expectation of benefit."

<u>Id.</u> at 264-65 (internal quotations and citations omitted).   The district court specifically instructed the jury that it did not need to find that the defendant committed or promised to commit a quid pro quo.  <u>Id.</u> at 261 n.4.

After McCormick was convicted and the court of appeals affirmed his conviction, he petitioned the Supreme Court for certiorari.  <u>Id.</u> at 265.  The Supreme Court granted his petition and reversed his conviction.  The Court disapproved of the district court's instruction that a public official commits extortion under color of official right if he receives a campaign contribution that was "never intended to be [a] legitimate campaign contribution[]."  <u>Id.</u> at 271 (internal quotations omitted).  Under a color of official right theory of extortion, the Court held that the prosecution must prove a quid pro quo.  <u>Id.</u> at 272.  The Court noted that legislators are in the business of serving their constituents, and that money is constantly solicited to

13

finance their campaigns.  Id.  Absent a quid pro quo requirement, every legislator who acts for the benefit of donors to his campaign would be subject to a prosecution under the Hobbs Act.  Id.  Thus, the receipt of money by an elected official is "under color of official right" only if "the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act."  Id. at 273.

Relying on this holding, the Suttons argue that Count 1 must allege that Blitch demanded something of value from the Suttons in return for being appointed to their respective positions.  The Court disagrees with this argument.  The holding in McCormick has no applicability to this case because it involved a different statute than the one at issue here.  In that case, the Supreme Court was interpreting the "under color of official right" language of § 1951.  No such language appears in any of the statutes charged in Count 1, and the elements of an honest service fraud violation are different from the elements of a Hobbs Act violation.  To establish a violation of the honest services fraud statute, the prosecution must establish that the defendant "intentionally participated in a scheme or artifice to deprive the persons or entity to which the defendant owed a fiduciary duty of the intangible right of honest services, and used the United States mails to carry out that scheme or artifice."  United States v. Browne, 505 F.3d 1229, 1265 (11th Cir. 2007).  Although courts have held that a government official can deprive the public of its intangible right to honest services by accepting a quid pro quo bribe, the Suttons have been unable to cite, and this Court has been unable to find, a single case in which a court has held

14

that a quid pro quo is a necessary element of an honest services charge.  See, e.g.,
United States v. Panarella, 277 F.3d 678, 690 (3d Cir. 2002) ("Honest services fraud
typically occurs in two scenarios:  (1) bribery, where a legislator was paid for a
particular decision or action; or (2) failure to disclose a conflict of interest resulting
in personal gain." (internal quotations omitted));  United States v. Bryant, 556 F.
Supp. 2d 378, 397 (D.N.J. 20008) (referring to the quid pro quo bribery theory of
honest services fraud).  As a result, Count 1's failure to allege a quid pro quo does
not render it subject to dismissal.

### C.  Failure to Allege the Requisite Specific Intent in Counts 1-8 and 11

The Suttons argue that Counts 1-8 and 11 should be dismissed because they
do not allege that the Suttons had the requisite specific intent to commit the offenses
charged in those Counts.

An indictment is sufficient if (1) it contains the elements of the offense intended
to be charged and sufficiently apprises the defendant of the charge he must
defendant against, and (2) it permits the defendant to plead an acquittal or conviction
in bar of future prosecutions for the same offense.  Hamling v. United States, 418
U.S. 87, 117 (1974).  An indictment is generally sufficient if it charges in the
language of the statute.  United States v. Salman, 378 F.3d 1266, 1268 (11th Cir.
2004).  If an indictment tracks the language of the statute, "'it must be accompanied
with such a statement of the facts and circumstances as will inform the accused of
the specific offense, coming under the general description, with which he is

15

charged." United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). "When the indictment uses generic terms, it must state the offense with particularity." Id.

Here, the Suttons are charged with conspiracy to commit honest services fraud and mail fraud. Berrien Sutton is also charged with conspiracy to commit mail fraud. As to the conspiracy charges in Counts 1 and 11, the Supreme Court has held that "intent to accomplish an object cannot be alleged more clearly than by stating that parties conspired to accomplish it." Frohwerk v. United States, 249 U.S. 204, 209 (1919). Citing Frohwerk, the Former Fifth Circuit held in United States v. Purvis, 580 F.2d 853, 859 (5th Cir. 1978), that conspiracy incorporates willfulness and specific intent. Thus, assuming arguendo that Counts 1 and 11 had to allege specific intent, the allegations that the Suttons conspired to commit the underlying offenses is sufficient to allege that they possessed such intent. As to the substantive offenses charged in Counts 2-8, a mail fraud indictment need not specifically allege that the defendant had the specific intent to commit fraud. United States v. Freeman, 619 F.2d 1112, 1117 (5th Cir. 1980). Accordingly, the Court finds that Counts 1-8 and 11 are not deficient for failure to allege that the Suttons had the specific intent to commit fraud.

### D.  Failure to Allege Mailings in Counts 2 and 11

The Suttons argue that Counts 2 and 11 must be dismissed because they do not properly allege a mailing. The Suttons concede that Counts 2 and 11 allege that the mails were used; however, they contend that these Counts must allege the

16

specific mailings.  The Court finds this argument to be without merit.

Contrary to the Suttons's assertions, Count 2 alleges a specific mailing. Specifically, in paragraph 9, it alleges that "[o]n or about May 24, 2004, Berrien Sutton sent and caused to be sent false and fraudulent statements designed to increase his retirement benefit and did deposit or caused to be deposited the same in the United States Mail for delivery to the State Employees Retirement Board in Atlanta, Georgia."  (Indict. at 19-20.)   Count 11 charges Berrien Sutton with conspiracy to commit mail fraud.   Because this is a conspiracy charge, the Government need not prove an actual use of the mails.  United States v. Massey, 827 F.2d 995, 1001 (5th Cir. 1987); United States v. Reynolds, 762 F.2d 489, 494 (6th Cir. 1985); United States v. Donahue, 539 F.2d 1131, 1136 (8th Cir. 1976).  If the Government does not have to prove an actual use of the mails, they certainly do not have to allege the specific mailings.  For these reasons, the Court finds this argument to be unpersuasive.

**E.  Vagueness, the Due Process Clause, and the Rule of Lenity**

The Suttons argue that the Indictment must be dismissed because the honest services statute is unconstitutionally vague as applied in this case, the Due Process Clause prohibits this Court from judicially enlarging a criminal statute and retroactively applying such statute to the conduct charged in the Indictment, and the rule of lenity requires that this Court find that the conduct charged in the Indictment does not violate the honest services statute.

17

To survive constitutional scrutiny, a criminal statute must give "'fair warning...in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.'" United States v. Lanier, 520 U.S. 259, 265 (1997) (quoting McBoyle v. United States, 283 U.S. 25, 27 (1931)) (omission in original). In Lanier, the Supreme Court discussed "three related manifestations of the fair warning requirement":

> First, the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Second, as a sort of junior version of the vagueness doctrine, the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

Id. at 266 (internal quotations and citations omitted).

The Suttons rely on each of these manifestations of the fair warning requirement in arguing that the honest services statute cannot be constitutionally

18

applied to the facts alleged in the Indictment.  To resolve their argument, this Court must determine whether the honest services statute, "either standing alone or as construed, made it reasonably clear at the relevant time that the [Suttons'] conduct was criminal."  Id.

In Lopez-Lukis, the Eleventh Circuit stated that the "crux" of the honest services fraud theory is that "when a political official uses his office for personal gain, he deprives his constituents of their right to have him perform his official duties in their best interest."  102 F.3d at 1169.  Thus, when a government official secretly makes decisions based on his own personal interests, the official defrauds the public of its right to his honest services.  Id.

Here, the Indictment contains allegations that the Suttons and Blitch conspired to use their government positions for personal gain and did not act in the public's best interest.  Specifically, Blitch is alleged to have used his judicial office to create unnecessary governmental positions to help get his friends, the Suttons, out of debt.  The Suttons are alleged to have accepted these unnecessary positions and received taxpayer-funded salaries for doing "little or no work."  Based on Lopez-Lukis, it was reasonably clear at the time of the conduct charged in the Indictment that the Suttons' conduct violated the honest services statute.

### F. Separation of Powers

The Suttons contend that the Indictment violates the principle of separation of powers as expressed in the United States Constitution.  They argue that the

19

Executive Branch of the federal government is attempting to criminalize the alleged ethical misconduct of judges.   According to the Suttons, Georgia's Judicial Qualifications Commission ("JQC") is empowered to investigation ethics violations by state judges, and by bringing this Indictment, the prosecution has intruded on the JQC's self-policing mechanisms.

The Suttons's argument is without merit.  The JQC is an administrative body that does not have jurisdiction over criminal cases.  Taking the Suttons' argument to its logical extreme, state judges in Georgia could never be charged with a federal offense for actions taken in their official roles because only the JQC could punish such judges administratively.  There is simply no merit to the contention that the separation of powers doctrine prohibits federal prosecutors from prosecuting state judges whose conduct violates federal statutes.

### G.  Failure of Count 11 to State a Criminal Offense

The Suttons contend that Count 11 fails to state a criminal offense.  Count 11 alleges that Berrien Sutton signed unlawful judicial orders authorizing the imposition of a $10 fee against misdemeanor probationers.  These fees were collected, deposited into a bank account hidden from the Clinch County Commission, and disbursed to certain employees in the Clerk's and Sheriff's Offices.  The crux of the Government's theory in Count 11 is that Berrien Sutton did not have the lawful authority to impose the fee at issue, and therefore, he defrauded the probationers out of their money by acting as though he did in fact have the legal authority to impose

the fee.  According to Berrien Sutton, these fees were authorized under Georgia law. In response, the Government contends that the fees were not authorized under the Georgia Code and the Clinch County Commission expressly ordered that Sutton not charge the fees.

Section § 42-8-100 of the Georgia Code applies to the imposition of probated sentences in a county that has a county or municipal probation system, or where the county has contracted with a private entity to provide probation services.  See O.C.G.A. § 42-8-30.1.  Under § 42-8-100(d), a court sentencing a misdemeanor defendant to probation "may, in its discretion, require the payment of a fine or costs, or both, as a condition precedent to probation." O.C.G.A. § 42-8-100(d) (emphasis added).  Based on this statute, Berrien Sutton argues that he had the legal authority to issue a blanket judicial order imposing the $10 fee on all misdemeanor probationers, and therefore, he did not defraud the probationers.  The Court disagrees.

Although judges in Georgia do have the discretion to impose a fine, costs, or both, as a condition precedent to probation, the fees assessed in this case do not constitute fines or costs.  Georgia law provides that "[t]he clerks of the several courts shall pay into the county treasury of the county where the court is held all moneys arising from fines and forfeitures collected by them." O.C.G.A. § 15-21-2(a).  Under this statute, "court fines and forfeitures are indeed County funds." Morgan v. County Bd. of Com'rs v. Mealor, 280 Ga. 241, 243, 626 S.E.2d 79, 81 (2006).  Count 11

21

alleges that Sutton and Blitch created these fees, not to go into the County treasury, but to go into a private slush fund that they created. The existence of this fund was hidden from the County Commission and doled out at Blitch's discretion to provide a salary supplement to certain employees. During the time the fees were allegedly unlawfully imposed, a private entity, not the County employees who received the salary supplement, supervised misdemeanor probationers. Thus, the fee did not operate as either a fine or a cost. Because the Court finds that Berrien Sutton did not have the authority to impose the fee at issue, the Court rejects the argument that Count 11 fails to state an offense on the ground that the fees were lawfully imposed.

### H. Judicial Immunity for Conduct Charged in Count 11

Last, Berrien Sutton contends that he is entitled to judicial immunity for the conduct charged in Count 11 because he acted in good faith in imposing the fees. It is well-established that there is no summary judgment procedure in criminal cases. Salman, 378 F.3d at 1268. In reviewing the sufficiency of an indictment, the district court is limited to reviewing the face of the indictment. Id. at 1268. To determine whether Sutton acted in good faith, this Court would have to look beyond the face of the Indictment and consider the evidence in support of Count 11. Thus, at this stage, the Court cannot address the judicial immunity argument. This argument would be more appropriately raised with the jury or with the Court on a Rule 29 motion.

### III. CONCLUSION

For the foregoing reasons, the Suttons' Motion to Dismiss is denied.

**SO ORDERED**, this the 11th day of February, 2009.


_s/   Hugh Lawson_
**HUGH LAWSON, Judge**

dhc