IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | |
| BERRIEN AND LISA SUTTON, | : | Criminal Action No. |
| | : | 5:08-CR-40(HL) |
| Defendants. | : | |
| | : | |
| | : | |

# ORDER

Before the Court is Defendant Berrien Sutton's Motion to Suppress Statements (Doc. 95). For the following reasons, Sutton's Motion is granted in part and denied in part. The Motion is granted only to the extent that Sutton seeks to prohibit the Government from directly using against him statements he made after April 2007. The Government can still make derivative use of all statements given after April 2007.

**I.     BACKGROUND**

Berrien Sutton is currently under Indictment for conspiracy to commit honest services fraud, conspiracy to commit mail fraud, and multiple counts of mail fraud. The charges against Sutton arise out of a federal investigation into allegations of official corruption in the Alapaha Judicial Circuit in South Georgia. Before being indicted, Sutton met with federal investigators and prosecutors on several different

1

occasions to provide information that would assist them in their investigation. The dates of those meetings were (1) December 14, 2006, (2) January 1, 2007,[1] (3) March 12, 2007, (4) March 29, 2007, (5) May 9, 2007, and (6) May 22, 2007.

In his Motion to Suppress Statements, Sutton moves to suppress all statements he made to the federal authorities. He contends that he gave the statements only after he was assured by the Government that his statements would not be used against him, that he was not a target of the investigation, and that he would be afforded immunity for his statements. According to Sutton, the Government's false assurances were designed to dupe him into giving incriminating statements that the prosecution now intends to use against him at his upcoming trial. Based on the Government's misleading conduct, Sutton contends that his statements should be suppressed.

In response, the Government contends that it did not deceive Sutton in any way. According to the Government, it discussed the issue of immunity with Sutton, but the two sides never reached a consensus on the terms of such an agreement. Specifically, in April 2007, Sutton refused to sign the proffer letter prepared by the Government because he did not agree to the terms. Assistant United States Attorney Jim Crane represented to Sutton that regardless of whether he signed it, the

---

[1] There is apparently some disagreement about whether this interview occurred on January 1 or January 10. For purposes of this Order, this Court will refer to the January interview as taking place on January 1.

2

Government would be bound by the terms in the letter. Based on this representation, the Government concedes that all statements that were given after April 2007 cannot be used against Sutton; however, the Government contends that it should be able to make derivative use of all statements given after April 2007 because the terms of the unsigned proffer letter permitted such use. As to the December, January, and March interviews, the Government contends that it can make direct and derivative use of all statements that Sutton gave in those interviews.

## II.  DISCUSSION

Because the Government concedes that Sutton's statements from the two May 2007 interviews cannot be used against him, the only issue for the Court to resolve is whether his statements from the interviews on December 14, 2006, January 1, 2007, and March 12 and 29, 2007, should be suppressed.

### A. December 14th and January 1st Interviews

The record does not support a finding that Sutton gave statements at either of these interviews based on a deliberate attempt by the Government to make him believe that he would be afforded immunity for his statements. In an Affidavit submitted by Sutton (Doc. 203), he contends that in the January interview F.B.I. Agents Tony Smith and Jim Grady told him that none of his statements would be used against him. Sutton also avers that the Agents told him that he should consider a written proffer agreement, and that regardless of whether he signed such an agreement, his statements would not be used against him.

At a hearing held on this Motion in December 2008, Agent Grady testified under oath that neither he, AUSA Crane, nor Agent Smith told Sutton in December 2006 or January 2007 that none of his statements would be used against him. The Court found Grady to be a credible witness and therefore credits his testimony. Also, regardless of whether Sutton and the Government discussed the issue of immunity at the January meeting, as Sutton contends, there is nothing in the record that supports a finding that the parties entered into an immunity agreement at that time. Accordingly, the Court finds that the Government did not induce Sutton into giving statements at the December 2006 or January 2007 interviews based on a false representation that the statements would not be used against him.

Sutton also contends that he voluntarily consented to the interviews because Agents Grady and Smith and AUSA Crane falsely told him he was not a target at the time. Although the Government concedes that it told Sutton he was not a target, there is nothing in the record that supports a finding that he was in fact a target of the investigation when these interviews occurred.

Moreover, Sutton relies on the United States Attorney's Manual in contending that the Government was required to warn him of his target status. The great weight of authority establishes that the failure to give target warnings is not grounds for suppression. See e.g., United States v. Myers, 123 F.3d 350 (6th Cir. 1997); United States v. Goodwin, 57 F.3d 815 (9th Cir. 1995); United States v. Gillespie, 974 F.2d 796 (7th Cir. 1992); United States v. Martino, 825 F.2d 754 (3d Cir. 1987); United

States v. Babb, 807 F.2d 272 (1st Cir. 1986); United States v. Whitaker, 619 F.2d 1142 (5th Cir. 1980).² As the Seventh Circuit has observed:

> "The Department of Justice may give such weight as it chooses to its internal rules. In all but the most exceptional cases, he who writes the rules may choose the actions for noncompliance.... [A]n effort to foist on the Executive Branch a sanction it does not wish could lead the Executive Branch to abandon [its] policy rather than suffer unwarranted reversals. Neither defendants nor courts would benefit from such an outcome."

Gillespie, 974 F.2d at 802 (quoting United States v. Schwartz, 787 F.2d 257, 267 (7th Cir. 1986)). Thus, assuming arguendo that the Government was required by DOJ policy to warn him of his target status but failed to do so, such failure would not lead this Court to conclude that his statements should be suppressed.

For these reasons, the Court finds that Sutton's statements from the December 2006 and January 2007 interviews should not be suppressed. The Motion to Suppress these statements is denied.

### B. March Interviews

On March 12, 2007, Sutton met with Agents Smith and Grady. Grady testified

---

²The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981). This body of precedent is binding unless and until overruled by the Eleventh Circuit en banc. Id.

at the Motions Hearing that neither he nor Smith represented to Sutton that his statements would not be used against him. Sutton has not presented the Court with any evidence that would lead this Court to question the veracity of Grady's testimony. The Court found Grady to be a credible witness and therefore credits his testimony. Based on Grady's testimony, the Court finds that Sutton was not mislead into believing his statements would be used against him. His Motion to Suppress these statements is denied.

On March 29, 2007, Sutton met with Agents Smith and Grady. At that meeting, Grady presented Sutton with a proffer letter that offered Sutton direct use immunity for his statements. The letter did not offer Sutton derivative use immunity. Sutton did not sign the letter because he did not agree to the derivative use provision. Sutton told Crane he did not agree to the terms. Crane told Sutton to make his proposed changes and send them to him. Sutton proposed changing the derivative use provision to allow the derivative use of his statements only against others. The Government informed Sutton that it did not agree to the change, and thus, the agreement was not signed.

According to Sutton, his statements at the March 29th interview should be suppressed because they were given under an informal immunity agreement. The Court disagrees. Promises of immunity from prosecution require an analysis of contract principles. <u>Rowe v. Griffin</u>, 676 F.2d 524, 528 (11th Cir. 1982). It is a fundamental principle of contract law that the existence of a valid contract requires

mutual assent by all parties to all terms. Dibrell Bros. Intern. S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1582 (11th Cir. 1994) (applying Georgia law); 1 Richard A. Lord, Williston on Contracts § 4:1 (4th ed. 2008).

In this case, the Government and Sutton did not assent to all the terms of the proposed agreement. Sutton did not agree to the derivative use provision and thus attempted to alter it. Sutton's counter-offer operated as a rejection of the offer contained in the proffer letter. See Peerless Cas. Co. v. Housing Authority of Hazelhurst, Ga., 228 F.2d 376, 379 (5th Cir. 1955)[3] ("Unless the acceptance is unconditional and without variance from the offer it is of no legal effect as an acceptance and operates as a rejection and a counteroffer."); Frickey v. Jones, 280 Ga. 573, 574, 630 S.E.2d 374, 376 (2006) ("'An answer to an offer will not amount to an acceptance so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort." (quoting Herring v. Dunning, 213 Ga. App. 695, 698, 446 S.E.2d 199 (1994)). AUSA Crane rejected Sutton's counter-offer by not agreeing to its terms. Thus, the parties did not enter into an immunity agreement at the March 29th interview. Because Sutton's statements at that interview were not given under an immunity agreement and because this Court finds

---

[3]The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981). This body of precedent is binding unless and until overruled by the Eleventh Circuit en banc. Id.

that there is no other evidence that supports a finding that he was deliberately misled into believing that his statements would not be used against him, his Motion to Suppress these statements is denied.

## III.    CONCLUSION

For the foregoing reasons, Sutton's Motion to Suppress is granted in part and denied part. The Motion is granted only to the extent that Sutton seeks to prohibit the Government from directly using against him statements he made after April 2007. The Government can still make derivative use of all statements given after April 2007.

**SO ORDERED**, this the 11th day of February, 2009.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

dhc