**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BERRIEN AND LISA SUTTON,** | : | **Criminal Action No.** |
| | : | **5:08-CR-40(HL)** |
| **Defendants.** | : | |
| | : | |
| | : | |

# ORDER

This matter is before the Court on Defendant Berrien Sutton's Motion to Suppress (Doc. 113) and Motion for Return of Seized Property (Doc. 104). For the following reasons, the Motion to Suppress is denied and his Motion for Return of Seized Property is granted in part and denied in part.

## I.    BACKGROUND

Defendant Berrien Sutton is an attorney in Homerville, Georgia at the firm of Sutton & Associates, P.C. ("S&A"). On July 17, 2008, Sutton was indicted for one count of honest services fraud conspiracy, several counts of mail fraud, and one count of conspiracy to commit mail fraud. The charges against Sutton followed a federal investigation into allegations of official corruption in the Alapaha Judicial Circuit in South Georgia. Among other things, the Indictment (Doc. 1) charges that Brooks E. Blitch, III, a former superior court judge in the Alapaha Circuit, created

1

unnecessary government positions and appointed Sutton and his wife, Lisa, to those positions to help them get out of debt.  In return, Blitch allegedly received free legal services from Berrien Sutton.

Before he was indicted, the Government issued a subpoena to S&A on February 7, 2008.  The subpoena commanded a representative of S&A to appear before the grand jury and produce "all billing records and accounts receivable related to Berrien Sutton's representation of Blitch Ford, Brett Blitch, Margaret 'Peg' Blitch, and/or Judge Brooks E. Blitch."  (Mot. Supp., Ex. F.)  Sutton, the CEO, sole shareholder, and only practicing attorney at S&A, filed a Motion to Quash.

The Court held a hearing on Sutton's Motion to Quash on April 9, 2008.  At the hearing, Assistant United States Attorney ("AUSA") Leah McEwen stated to the Court that the only information the Government sought was the amount of Sutton's attorney fees lien on Blitch Ford, and the existence of a fee agreement between Sutton and Blitch.  Sutton's attorney, Tom Withers, then called his client to learn the amount of the lien.  When he returned to the courtroom, Withers asserted that the amount claimed in the lien was one-third of Blitch Ford.  McEwen responded by stating that she might reissue the subpoena specifically for the contingency fee agreement.  Withers agreed to the Court's request for him to voluntarily produce the agreement if it existed.  The Court concluded the hearing by stating that the subpoena was satisfied, and it denied Sutton's Motion to Quash as moot.

In early June 2008, after Sutton was unable to locate the contingency fee

2

agreement, F.B.I. agent Tony Smith submitted an Application and Affidavit for Search Warrant and a proposed Search Warrant (Mot. Supp., Ex. C.) for S&A. Smith averred in his Affidavit that there was probable cause to believe that evidence of a conspiracy to commit mail fraud was located at S&A.; specifically, evidence that Blitch appointed Sutton and his wife to unnecessary government jobs in return for free legal services. The Court originally issued the warrant, but revoked it shortly thereafter based on several factual inaccuracies that appeared in paragraphs 48 and 49 of Smith's Affidavit. Of note, paragraph 49 stated that the Court denied Sutton's Motion to Quash the subpoena and ordered that he produce "the documents which show the amount of debt owed." (Smith Warrant Aff. ¶ 49.) The Court did not deny Sutton's Motion on the merits; it denied the Motion as moot based on the Court's finding that the subpoena had been satisfied. Because of paragraph 49's mischaracterization of the ruling, the Court revoked the warrant. (Mot. Supp., Ex. D.)

Shortly thereafter, on June 17, 2008, F.B.I. agent Jim Grady submitted a second Application and Affidavit for Search Warrant and a proposed Search Warrant (Mot. Supp., Ex. E) for S&A. The Affidavit and Application were essentially identical to Smith's, except Grady's Affidavit remedied the deficiencies in the Smith Affidavit by averring that the Court denied Sutton's Motion to Quash as moot and that Withers agreed to voluntarily produce the fee agreement. (Grady Warrant Aff. ¶ 49.) Because the Court found probable cause to believe that evidence of a crime was located at S&A and Grady accurately characterized the Court's prior ruling, the Court

3

issued the warrant.

The terms of the warrant authorized the searching agents to search for and seize:

(a) Documentation in whatever format pertaining to the representation of Blitch Ford, Brooks E. Blitch III, Margaret Peg Blitch, and/or Brett Blitch, by Sutton and/or Sutton and Associates, P.C. (SAP), including but not limited to contracts for services, payment records, letters or other memorandum outlining services to be performed and fee agreements.

(b) Records in whatever format pertaining to billing records for Blitch Ford, Brooks E. Blitch III, Margaret Peg Blitch, and/or Brett Blitch.

(c) Records in whatever format pertaining to contingency agreements with Blitch Ford, Brooks E. Blitch III, Margaret Peg Blitch, and/or Brett Blitch.

(d) Computer hardware, meaning any and all computer equipment. Included within the definition of computer hardware are any electronic devices capable of data processing (such as central processing units, laptops or notebook computers, personal digital assistants, hand-held computers, and wireless communication devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media); relating

4

communications devices (such as modems, cables and connections); storage media, defined below; and security devices, also defined below.

(e) Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components.   Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

(f)  Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

(g) Data security devices, meaning any devices, programs, or data–whether themselves in the nature of hardware or software–that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records.   Such

5

items include, but are not limited to, user names and passwords; data security hardware (such as encryption devices, chips, and circuit boards); data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

(h) Storage media capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and backing up electronic data. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer-related equipment, such as fixed hard disks, external hard disks, removable hard disks, floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical storage devices, laser disks, thumb drives, flash memory, or other memory storage devices.

(Grady Warrant Aff. pp. 36-37.)

Grady's Affidavit also contained several pages on search protocol. Most notably, the Affidavit provided for a "taint team" procedure to protect information covered by the attorney-client privilege. This procedure provided that the search would be conducted by a "privilege search team" that consisted of law enforcement agents who had no previous involvement in the underlying investigation. (Grady

6

Warrant Aff. ¶ 62.)  The team would be assisted by a "privilege prosecutor" with no previous knowledge of, or involvement in, the investigation.  The privilege prosecutor would be responsible for answering any legal questions that arose during the search. The privilege search team would deliver all seized evidence to the privilege prosecutor, who would then deliver to the prosecuting attorneys all non-privileged documents.  All privileged documents and documents outside the scope of the warrant would be returned to S&A by the privilege prosecutor.  (Grady Warrant Aff. ¶¶ 62-64.)

On June 18, 2008, agents from the F.B.I. executed the warrant at S&A, 172 W. Dame Avenue, Homerville, Georgia.  The privilege search team was led by F.B.I. Agent Cynthia Allard.  AUSA Alan Dasher served as the privilege prosecutor.

In his Motion to Suppress, Berrien Sutton seeks to suppress all evidence that was obtained during the June 18th search of S&A.  He has moved to suppress on five grounds: (1) probable cause did not exist; (2) whatever probable cause existed was based on a false representation in Grady's Affidavit; (3) the warrant was overbroad; (4) the search itself exceeded the scope of the warrant; and (5) the search violated Sutton's attorney-client privilege.  The Government contests each of these grounds, and in addition, it asserts that Sutton lacks standing to challenge the lawfulness of the search.

On December 17 and 18, 2008, the Court held a hearing on all pending Motions.  At the hearing, Sutton testified to establish standing, and two other

7

witnesses testified in support of his Motion to Suppress: Chad Corlee, a sole practitioner whose office is located in the same building as S&A; and Joyce Cason, a receptionist for S&A.   Agent Grady was the only witness who testified for the Government.

## II.    DISCUSSION

### MOTION TO SUPPRESS

Before addressing Sutton's arguments, the Court must first determine whether he has standing to bring this Motion.  See United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (observing that standing is a "threshold issue").

### A.    Sutton's standing

The Government discusses the legal standard for standing for several pages in its Brief in Support; however, other than the point heading that states "Sutton does not have standing to raise the rights of others," the Government does not mention Sutton and the facts of this search.  Thus, it is difficult to ascertain the precise basis for the Government's argument.   Based on the Government's citation to cases involving searches of commercial premises and its arguments at the hearing, the Court concludes that the Government is arguing that Sutton lacks standing because the building searched is a commercial premises and the records seized belong to the corporation of S&A.

To establish standing to challenge an unlawful search, the movant must

"manifest a subjective expectation of privacy in the invaded area that 'society is prepared to recognize as reasonable.'" United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998). An individual has standing to object to a search of his office. Mancusi v. DeForte, 392 U.S. 364, 369-70 (1968). However, because Fourth Amendment rights are personal in nature, "an individual cannot assert a corporation's Fourth Amendment rights absent a showing that he had an independent privacy interest in the good seized or the area searched." United States v. Vicknair, 610 F.2d 372, 379 (5th Cir. 1980).[1] In determining whether an individual's privacy interest in an area or thing is independent of the corporation's interest, a relevant factor is whether the search was targeted at the individual or corporate activity generally. United States v. Bush, 582 F.2d 1016, 1019 (5th Cir. 1978); United States v. Hunt, 505 F.2d 931, 938 (5th Cir. 1974). Other factors relevant to this inquiry include the movant's ownership in the place searched or thing seized, Hunt, 505 F.2d at 938, whether he prepared the documents that were seized, Bush, 582 F.2d at 1019, his attempts to maintain his privacy, Vicknair, 610 F.2d at 380, and his use of the area, id.

Applying these factors, the Court finds unpersuasive the Government's argument that Sutton lacks standing. First, Sutton owns the building that was

---

[1] The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981). This body of precedent is binding unless and until overruled by the Eleventh Circuit en banc. Id.

searched, (Dec. 17 Hr'g Tr. 110), and he is the Chief Executive Officer, Chief Financial Officer, and Secretary of S&A (Dec. 17 Hr'g Tr. 115).  He is S&A's only practicing attorney.  (Dec. 17 Hr'g Tr. 110.)  Second, his use of the premises demonstrates that he has a reasonable expectation of privacy there.  His residence is located in the upstairs of the building, (Dec. 17 Hr'g Tr. 111), he maintains in his office personal papers and marital communications between him and his wife, (Dec. 17 Hr'g Tr. 111), and he keeps in his office two filing cabinets: one for personal records and one for business records (Dec. 17 Hr'g Tr. 112).  Finally, it is clear from Grady's Affidavit and Application that the search was targeted at Sutton, rather than the general corporate activity of S&A.  Based on these facts, the Court has little difficulty concluding that Sutton had a reasonable expectation of privacy in the premises searched, and that his privacy interests in that premises and the things seized are independent of S&A's interests as a corporation.  As a result, the Court finds that Sutton has standing to challenge the legality of the search.

Having determined that Sutton has standing, the Court now turns its attention to Sutton's arguments that the seized evidence should be suppressed.

### B.     Whether probable cause existed

Sutton argues that Grady's Affidavit does not establish probable cause to believe that a contingency fee agreement between Sutton and any Blitch family members or entities would be found at Sutton's law office.  In response, the Government discusses the general probable cause standard for several pages, but

fails to cite the Court to any part of the Affidavit that establishes probable cause.

It is well-established that a search warrant must be supported by probable cause. See U.S. Const. amend. IV; United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000). Probable cause exists if the affidavit in support of the search warrant contains facts sufficient to justify a conclusion that there is a fair probability that contraband will be discovered on the premises. United States v. Anton, 546 F.3d 1355, 1358 (11th Cir. 2008); United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). In determining whether probable cause exists, the affidavit should be construed in a common sense manner. Illinois v. Gates, 462 U.S. 213, 236 (1983). An issuing judge's probable cause determination should be "'paid great deference by reviewing courts,'" id. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)), and it will be upheld if there exists a substantial basis for concluding that probable cause existed. United States v. Green, 40 F.3d 1167, 1171-72 (11th Cir. 1994).

Here, Sutton's argument that probable cause was lacking is premised on the assumption that the warrant only authorized agents to search for the contingency agreement that Withers agreed to voluntarily produce. Grady's Affidavit and Application are not so limited. The Affidavit establishes probable cause to believe that Sutton and Judge Blitch conspired to create unnecessary government positions for the Suttons in return for Berrien Sutton providing free legal services to Judge Blitch. Thus, the Government sought to search Sutton's law office not just for any

11

contingency fee agreements that may have existed, but also for evidence of pay arrangements and other billing records between Sutton and any Blitch family members or entities.  As the premises searched was Sutton's law office, it was reasonable to believe that Sutton's billing records and pay arrangements for his clients would be found at that location.  Accordingly, the Court finds that there is a substantial basis for the conclusion that probable cause existed to believe that the evidence sought in Grady's Application would be discovered at S&A.

### C.    Whether probable cause was founded on a false representation

Sutton contends that whatever probable cause did exist was based on false representations in Grady's Affidavit.  In particular, Sutton focuses on paragraphs 49 and 50 and argues that Grady mischaracterized the terms of the agreement between the Government, the Court, and himself.  He also argues that Grady incorrectly stated that the subpoena issued to S&A demanded the production of a contingency fee agreement.

"[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing."  Franks v. Delaware, 438 U.S. 154, 164-65 (1978) (citation omitted) (emphasis in original).  Thus, a search warrant may be rendered invalid if the probable cause determination was based on statements or omissions in the affidavit that were deliberately false or made with reckless disregard for the truth.  Franks, 438 U.S. at 155-56; Dahl v. Holley, 312 F.3d 1228, 1235 (11th Cir. 2002).  A warrant

will still be valid, however, if after excising the misstatements or omissions from the affidavit, there remains sufficient factual averments to support a finding of probable cause. Dahl, 312 F.3d at 1235 (citing Franks, 438 U.S. at 171-72).

Here, any misstatements or omissions in Grady's Affidavit were not the sole basis for the probable cause determination. Sutton complains only of Grady's averments in paragraphs 49 and 50 regarding the sequence of events that followed the issuance of the subpoena and the subsequent Motion to Quash Hearing where Sutton agreed to produce the contingency agreement if it existed. As noted above in the Court's discussion of probable cause, probable cause to search was not founded solely on whether Sutton was complying with his voluntary agreement to produce the contingency fee agreement and whether that agreement would be found at S&A. The Affidavit and Application were much broader, seeking "[d]ocumentation in whatever format pertaining to the representation of Blitch Ford, Brooks E. Blitch III, Margaret Peg Blitch, and/or Brett Blitch, by Sutton and/or Sutton and Associates, P.C., including but not limited to contracts for services, payment records, letters or other memorandum outlining services to be performed and fee agreements." (Grady Warrant Aff. p. 36.) Contingency agreements constituted only one type of documentation that was sought by the warrant. Thus, assuming arguendo that paragraphs 49 and 50 contain misstatements or omissions, the rest of the Affidavit contains factual averments sufficient to support a finding of probable cause.

13

### D.      Whether the warrant was overbroad

Sutton argues that the warrant was overbroad because it authorized agents to search for, and seize, "any and all" electronic equipment, data and information, and it failed to include a search protocol for the computers and other electronic files.

The Fourth Amendment requires that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The purpose of this particularity requirement is to prevent authorities from subjecting individuals to "general, exploratory searches." United States v. Khanani, 502 F.3d 1281, 1290-91 (11th Cir. 2007).  "It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982).

Here, the Court finds that the warrant's authorization for agents to seize "any and all" electronic equipment does not render it insufficiently particular.  The Affidavit established probable cause to believe that documentation of Sutton's representation of various Blitch family members and entities constituted evidence of a crime.  The warrant thus authorized the agents to seize such documentation "in whatever format." (Grady Warrant Aff. p. 36.)  The warrant goes on to list various formats of electronic data as being subject to seizure.  It is well-established that "[a] lawful

14

search of a fixed premises generally extends to the entire area in which the object of the search may be found." United States v. Ross, 456 U.S. 798, 820-21 (1982). The documentation sought by the warrant in this case could have been found in an electronic format in any one of the various devices that was listed as subject to seizure. Thus, it was not unreasonable for the warrant to authorize agents to seize the listed electronic devices during its search for evidence. Due to the nature of electronic devices, there is no way to know what data is contained in them without actually examining the devices' contents.

In addition, the warrant is not rendered insufficiently particular based on the lack of a search protocol for electronic data. The absence of a written search protocol for electronic data does not render a search per se unreasonable under the Fourth Amendment. Khanani, 502 F.3d at 1291; see also United States v. Cartier, 543 F.3d 442, 447 (8th Cir. 2008); United States v. Brooks, 427 F.3d 1246, 1251-52 (10th Cir. 2005). Rather, as with all searches, the touchstone is whether the search was reasonable under the totality of the circumstances. See Khanani, 502 F.3d at 1291 (analyzing circumstances surrounding computer search to determine whether it was reasonable); see also Cartier, 543 F.3d at 447 (holding that search of computer in absence of written protocol was reasonable under the Fourth Amendment where the defendant could not establish that he was prejudiced by a search of unrelated files or that unrelated files were actually searched). Sutton has not presented any facts that would lead this Court to conclude that the search of

15

electronic data in this case was unreasonable under the totality of the circumstances. Thus, the Court finds that the absence of a written search protocol in this case does not render the warrant unconstitutional.

### E.    Whether the search exceeded the scope of the warrant

Sutton argues that the search itself exceeded the scope of the warrant, and that total suppression of all evidence seized during the course of the search is the appropriate remedy.  In response, the Government concedes that some documents outside the scope of the warrant were seized; however, it argues that the suppression of only those documents is appropriate, and that documents seized within the scope of the warrant should not be suppressed.

The general rule is that the seizure of items outside the scope of a warrant will not affect the admissibility of items properly seized.  Khanani, 502 F.3d at 1289.  The remedy of total suppression is only appropriate "where the executing officer's conduct exceeds any reasonable interpretation of the warrant's provisions." Wuagneux, 683 F.2d at 1354.  "Absent a flagrant disregard of the terms of a warrant, seizure of items outside the scope of the warrant does not affect admissibility of items properly seized or constitute reversible error on a direct appeal from the conviction."  United States v. Lambert, 887 F.2d 1568,  1572 (11th Cir. 1989).  "The crucial inquiry is always 'whether the search and seizures were reasonable under all the circumstances.'"  United States v. Schandl, 947 F.2d 462, 465 (11th Cir. 1991) (quoting Wuagneux, 683 F.2d at 1352).   Factors that are relevant to the

16

reasonableness inquiry include "the scope of the warrant, the behavior of the searching agents, the conditions under which the search was conducted, and the nature of evidence being sought." Id.

Here, Sutton makes numerous conclusory assertions that the search was grossly overbroad, but he has failed to produce evidence, in the form of either affidavits attached to his Motion to Suppress or testimony at the motions hearing, that would support a finding that the searching agents acted in flagrant disregard of the warrant's terms.  First, Sutton complains that agents seized documents and electronic data relating to clients that were not members of the Blitch family.  In particular, Sutton argues that agents improperly seized a server at his law office that Sutton and Corlee jointly owned, and that the server contained all of Sutton's and Corlee's client files.  Sutton, however, has failed to propose an alternative method that the agents could have employed that would not have resulted in agents seizing the entire server.  It is not as though the agents could have seized only Sutton's one-half interest in the server.  To properly search for the files and documents that were the object of the search, the agents needed to seize the entire server.

Second, Sutton makes numerous conclusory assertions that agents seized "voluminous" amounts of unrelated material, including Corlee's client files and Sutton's files for clients other than the Blitches.  Other than the electronic data discussed above, the agents seized a minimal amount of physical documentation and files that were outside the scope of the warrant.  As to Corlee's files, Sutton cites

17

to an affidavit submitted by Corlee that is supposed to be attached as exhibit H.  The Court is unable to find an exhibit H attached to his Motion to Suppress. Nevertheless, at the hearing, Corlee testified only that "it appeared to [him] that [his] files had been tampered with."  (Dec. 17 Hr'g Tr. 94.)  He did not testify that any of his files were actually seized, nor did he testify that he witnessed any agents going through his files.

As to Sutton's client files that were outside the scope of the warrant, Dasher, the privilege prosecutor, submitted to the Court all evidence outside the scope of the warrant that was seized by the agents.  This evidence, in addition to not being voluminous, does not contain a single client file that does not belong to a member of the Blitch family or an entity owned by the Blitches.  At the hearing, Sutton's receptionist, Cason, did testify that it appeared agents opened "two or three" client files that did not belong to any of the Blitches, (Dec. 17 Hr'g Tr. 128); however, the agents' conduct in opening these files does not amount to a flagrant disregard for the terms of the warrant.

Last, Sutton argues that the agents' conduct constituted a flagrant disregard because Agent Cynthia Allard seized a printout of an email that Sutton sent to Withers, his defense attorney in this criminal case.  Agent Allard's conduct in seizing the email is disturbing, and the Court does not condone her conduct; however, the Court cannot say that this one instance of inappropriate conduct renders the entire search unreasonable.

18

In sum, in considering the totality of the circumstances, the Court finds that the search of Sutton's law office was not unreasonable, and thus the remedy of total suppression is not appropriate.  Prior to the search, the agents attended a search protocol meeting, (Dec. 17 Hr'g Tr. 157); during the search, only a minimal amount of evidence outside the scope of the warrant was seized; and evidence that was seized outside the scope of the warrant was not turned over to the prosecution–it was given to the privilege prosecutor, who in turn returned it to Sutton.  In cases with far more compelling facts that those presented in this case, this Circuit has held that the conduct of agents did not amount to a flagrant disregard.  See, e.g., Schandl, 947 F.2d at 465-66 (holding that agents did not act in flagrant disregard where agents seized  love letters and personal documents that were unrelated to evidence sought by the warrant); United States v. Santarelli, 778 F.2d 609 (11th Cir. 1985) (concluding that agents' conduct did not amount to flagrant disregard where agents seized Disney World tickets and children's report cards).  As a result, the Court finds that the remedy of total suppression is not appropriate.

### F.     Whether the search violated Sutton's attorney-client privilege

Finally, Sutton argues that the search violated his attorney-client privilege. Although numerous federal courts have observed that searches of law offices should be executed with special care to avoid infringing the attorney-client privilege, special legal rules do not apply to the review of such searches.  See United States v. Mittelman, 999 F.2d 440, 445 (9th Cir. 1993); United States v. Abbell, 963 F. Supp.

19

1178, 1199 (S.D. Fla. 1997).

In this case, there is no evidence that the agents unnecessarily intruded on confidential attorney-client communications.  As noted above, other than the one email printout that was seized, agents seized only a minimal amount of evidence outside the warrant's scope.  This evidence consisted mostly of documents that related to Sutton's representation of the Blitches.  In addition, the agents employed a taint team procedure to protect privileged documents.[2]  Pursuant to this procedure, the agents delivered directly to the privilege attorney all evidence seized from S&A. (Vol I Dec. 18 Hr'g Tr. 8).  The privilege attorney kept the documents in sealed envelopes and reviewed them to determine whether they were privileged.  (Vol I Dec. 18 Hr'g Tr. 9.)  At no time did any prosecuting attorneys view any privileged material.  For these reasons, the Court finds that Sutton has failed to demonstrate that the search violated his attorney-client privilege.[3]

## MOTION FOR RETURN OF SEIZED PROPERTY

Sutton's Motion for Return of Seized Property is premised on his contention that the search of his law office was unconstitutional, and thus the evidence obtained

---

[2]Sutton makes the bald assertion in his Motion to Suppress that Agents Grady and Smith were outside S&A reviewing documents that were seized by agents from the search team.  He has cited nothing in his Motion to support this assertion.  At the hearing, there was no evidence that Grady and Smith reviewed any such documents.  In fact, Corlee testified that he did not see any communications between the searching agents and Grady and Smith during the course of the search.  (Dec. 17 Hr'g Tr. 106-07.)

[3]In addition, to whatever degree the search may have violated this privilege, total suppression would not be the appropriate remedy.

during the search should be suppressed and returned to him.  Because the Court has denied his Motion to Suppress, his Motion for Return of Seized Property is denied to the extent that it seeks the return of seized property that falls within the scope of the warrant.  To the extent he seeks the return of evidence outside the scope of the warrant that has not yet been returned to him, his Motion is granted.  Also, the Government made a mirror image of the hard drive seized from the server and has returned the original hard drive to Sutton.  The mirror image is in the Clerk's office under seal.  Because the Government may need to use it at trial, the mirror image shall remain under seal in the Clerk's office until further order of the Court.

## III.   CONCLUSION

For these reasons, Sutton's Motion to Suppress is denied and his Motion for Return of Seized Property is granted in part and denied in part.

**SO ORDERED**, this the 25th day of February, 2009.


*s/  Hugh Lawson*
**HUGH LAWSON, Judge**

dhc

21